# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**LESLIE BARR,**

        **Plaintiff,**

**vs.**                                              **Case No. 8:06-cv-1568-T-27TGW**

**CITY OF EAGLE LAKE,**

        **Defendant.**

_____/

## ORDER

**BEFORE THE COURT** are: (1) Defendant's Motion for Summary Judgment (Dkt. 20), to which Plaintiff has responded in opposition (Dkt. 25); (2) Defendant's Motion to Strike Portions of Plaintiff's Affidavit (Dkt. 27), to which Plaintiff has responded in opposition (Dkt. 28); (3) Plaintiff's Motion to Strike the Affidavit of Patricia Jackson (Dkt. 43), to which Defendant has responded in opposition (Dkt. 66); (4) Plaintiff's Motion to Strike Portions of the Affidavit of J.R. Sullivan (Dkt. 44), to which Defendant has responded in opposition (Dkt. 67); (5) Plaintiff's Motion to Strike Supplemental Affidavit of Patricia Jackson (Dkt. 52), to which Defendant has responded in opposition (Dkt. 69); (6) Plaintiff's Motion to Strike Portions of the Supplemental Affidavit of J.R. Sullivan (Dkt. 53), to which Defendant has responded in opposition (Dkt. 70); (7) Plaintiff's Motion to Compel Answers to Deposition Questions (Dkt. 45), to which Defendant has responded in partial opposition (Dkt. 61); and (8) Plaintiff's Motion to Compel and "Motion to Abate any Addition of a Decision on Defendant's Motion for Summary Judgment" (Dkt. 73), to which Defendant has responded in opposition (Dkt. 74).  The Court heard oral argument on January 30,

1

2008. (Dkts, 39, 58).   Upon consideration, Defendant's Motion for Summary Judgment is GRANTED and the Motions to Strike and Motions to Compel are DENIED.

### Background

Plaintiff Leslie Barr ("Plaintiff"), a former police officer with the City of Eagle Lake ("Defendant") and a white female, filed this action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 *et seq.*, alleging that she was discriminated against because of her gender and because of her relationship with an African-American male. (Dkt. 1, ¶¶ 3, 5).  Specifically, Plaintiff alleges that her contract was not renewed upon its expiration on September 30, 2005, and that she was not hired for three open police officer positions. (Dkt. 1, ¶¶ 5, 7-8).  Defendant contends that it had legitimate, non-discriminatory reasons for not selecting her for the positions, including her alleged lack of experience as a patrol officer and her previous resignation from Polk Correctional Institution while under investigation for inappropriate relationships with inmates.

During the events at issue, Plaintiff and Theo Clay, an African American, were living together and had children together.  (Pl. Dep. at 107).  On October 6, 2003, Plaintiff was hired by the Eagle Lake Police Department ("Police Department") as a Gang Resistance Education and Training ("GREAT") officer.  (Sullivan Aff. ¶ 7).  During her employment, Plaintiff was the only GREAT officer.  (Sullivan Aff. ¶ 8).  The position was funded by a federal grant to Polk County, through the Florida Department of Law Enforcement ("FDLE").  (Sullivan Aff. ¶ 5).  The grant ran for a one-year period, from October to September of the following year.  (Sullivan Aff. ¶ 18). Plaintiff's responsibilities as GREAT officer included visiting and conducting programs at elementary schools about gangs and gang prevention; teaching alcohol, tobacco, and drug prevention

courses; conducting local bicycle training and street safety programs; and conducting parent education meetings and summer camp programs for students. (Sullivan Aff. ¶¶ 9-12).

On February 21, 2005, Plaintiff wrote a letter to Sullivan, the City Manager, and City Council members complaining that as the only female and pregnant person in the Police Department, she did not receive the same raises as other patrol officers, she did not have a laptop computer, and she had not received training she had requested. (Pl. Dep., Exh. 7). On March 4, 2005, Sullivan recommended Plaintiff for termination, finding that her direct complaint to the City Manager and City Council violated Defendant's grievance procedure, which required employees to follow the "chain of command." (Pl. Dep. at 42, Exh. 5). Sullivan then spoke with the City Manager, Patricia Jackson, who was responsible for making final hiring decisions for positions in the Police Department, taking into account the recommendations made by Sullivan. (Jackson Aff. ¶¶ 5-6; Jackson Dep. at 13, 16-17). Jackson suggested that Plaintiff not be terminated, and Sullivan changed his recommendation. (Jackson Dep. at 64; Sullivan Dep. at 56). On March 16, 2005, Sullivan instead placed Plaintiff on suspension without pay for five days and three months probation. (Pl. Dep. at 44, Exh. 6). Plaintiff does not challenge these actions in the instant suit.

At some point in March 2005, Plaintiff filed an EEOC charge.[1] (Pl. Dep. at 105-06, 112). Plaintiff later filed a lawsuit in state court arising from this charge of discrimination. (Dkt. 1, ¶ 2). Also in March 2005, Defendant contends that Plaintiff's position was eliminated at the end of the grant year, effective September 30, 2005, due to lack of grant funding. (Sullivan Aff. ¶ 21).

On April 18, 2005, Plaintiff sent an email to Sullivan stating: "I noticed that Eagle Lake

_____

[1] No copy of this charge has been filed, and the parties have not set forth the facts underlying this charge. Defendant asserts that the charge was filed on March 14, 2005, without citation to record evidence. (Dkt. 20 at 15).

Police Department did not elect to pursue the 4th year of the Great Program. My concern is to whether the City is going to pick up my position in full since to my knowledge no other grants have been written for this position." (Pl. Aff., Exh. 1). On April 27, 2005, Plaintiff wrote a memorandum to Sullivan inquiring whether her GREAT position would be terminated and whether she could be put in a fulltime police officer position posted on April 13, 2005. (Pl. Dep., Exh. 9). On June 13, 2005, Plaintiff wrote a second memorandum to Sullivan stating: "I am requesting that I be considered for the position of Full-Time Police Officer and/or Code Enforcement Officer. . . . I am aware of the vacancy for Police Officer and would like for you to accept this memorandum as an official request to be considered for this position." (Pl. Aff., Exh. 2). On July 15, 2005, Plaintiff sent a second email to Sullivan inquiring about her job status. (Pl. Aff., Exh. 3). Plaintiff alleges that Sullivan did not respond to any of these communications until July 18, 2005, when he sent a memorandum to Plaintiff stating only: "As you are aware, the 'G.R.E.A.T.' grant was not renewed and does expire 30 Sept. 2005." (Pl. Aff. ¶ 8, Exh. 5).

Plaintiff met with Jackson, the City Manager, on or about July 18, 2005, at the advice of Sullivan. (Pl. Aff., Exhs. 4, 6). On July 22, 2005, Jackson sent a follow-up email to Plaintiff, confirming with Plaintiff that she would have to apply for any open position. (Pl. Aff., Exh. 6). Defendant asserted in its original motion for summary judgment that Plaintiff never applied for any position after June 13, 2005. (Dkt. 20 at 5). In a July 22, 2005 email to Jackson, however, Plaintiff stated: "Please be advised that I seek a full time position with the City. Also, please accept this as my continuing expression for a non-grant postion (*sic*) with the Police Department." (Pl. Dep., Exh. 16). On or about August 22, 2005, Plaintiff sent a second email to Jackson stating: "[A]s of August 13, 2005 there is a full time police officer position available. I would like to be placed in that full

4

time position within the police department." (Pl. Aff. ¶ 9, Exh. 7). In addition, Jackson testified that the Police Department ran a background check on Plaintiff "because she had expressed an interest in a position." (Jackson Dep. at 24-25).

On September 20, 2005, Defendant hired Jonathan Munoz as a full-time police officer. (Pl. Aff. ¶ 10). Plaintiff alleges that Munoz was hired directly from the Police Academy and had no law enforcement experience. (*Id.*) Plaintiff also testified that Sullivan and a representative from the Sheriff's department spoke about a discrepancy in Munoz's application and "the chief said he would never hire him in his department." (Pl. Dep. at 77, 86). Defendant hired two other police officers on October 10, 2005 and November 28, 2005, one of whom was female. (Sullivan Aff. ¶ 24; Pl. Dep. at 106). Although Plaintiff alleges that she "continuously expressed interest" in the positions filled after the GREAT grant expired on September 30, 2005 (Pl. Aff. ¶ 13), Defendant contends that Plaintiff did not apply for either of the October and November positions. (Jackson Aff. ¶¶ 10-11).[2]

Sullivan and Jackson aver that Plaintiff would not have been hired for the three police officer positions because she had previously resigned from employment as a Correctional Officer with Polk Correctional Institution ("PCI") while under investigation for having improper relationships with inmates. (Sullivan Aff. ¶ 29; Jackson Aff. ¶ 16). Sullivan and Jackson also aver that the two officers hired after September 30, 2005 "both had patrol experience that greatly exceed Barr's experience" and that neither had resigned from prior employment while under investigation. (Sullivan Aff. ¶ 33; Jackson Aff. ¶ 20).

Plaintiff contends that Defendant's reasons are a pretext for unlawful discrimination. She

---

[2] During oral argument, counsel for Defendant clarified that they did not contest that Plaintiff applied for the position filled by Munoz on September 20, 2005.

5

argues that the information regarding her previous resignation from PCI was "fully divulged and discussed in full and complete detail before I was hired." (Pl. Aff. ¶ 17; Pl. Dep. at 23-24). Plaintiff also alleges that she had regular patrol officer experience as a GREAT officer, including running calls two to three hours a day during the hours school was not in session. (Pl. Aff. ¶ 5; Pl. Dep. at 30). In the summer of 2005, Plaintiff testified that she was assigned to the road, but focused on juvenile crimes. (Pl. Dep. at 37-38).

As additional evidence of a discriminatory motive, Plaintiff alleges that "Chief Sullivan would frequently make racial slurs in my presence. . . . Among many others, he referred to my biracial child as my 'kinky haired kid.'" (Pl. Aff. ¶ 16). Plaintiff has also submitted the affidavit of James Robert Christian, who was a reserve officer during the events at issue. (Christian Aff. ¶ 4). Christian avers that Jackson's husband, Butch Jackson, who was a detective with the Police Department, regularly called Plaintiff a "nigger loving bitch" and stated that as long as his wife was City Manager, Plaintiff would never get a police officer position. (Christian Aff. ¶ 11).

### *Procedural History*

Defendant filed its motion for summary judgment on August 6, 2007, approximately three months before the close of discovery on November 15, 2007. (Dkts. 15, 20). Plaintiff argued in response to Defendant's motion for summary judgment that she did not have time to conduct adequate discovery in order to prepare a sufficient response. (Dkt. 25 at 5-7). Accordingly, on November 20, 2007, the Court allowed Plaintiff an opportunity to submit a supplement to her response "to address evidence obtained through discovery after the filing of the response in opposition on September 17, 2007." (Dkt. 36). *See Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) ("summary judgment may only be decided upon an

adequate record."). Plaintiff did not submit any supplement or move for an extension of time in which to do so.

In the motion for summary judgment, Defendant construed Plaintiff's claim as limited to the two positions filled in October and November 2005. Based on a review of the Complaint and Plaintiff's deposition testimony, the Court determined that Plaintiff's claim also encompassed the hiring of Munoz on September 20, 2005. (Dkt. 39). Accordingly, this portion of Plaintiff's claim was set for hearing, and the parties were granted leave to file supplemental affidavits. (Dkt. 39). Both parties filed supplemental affidavits (Dkts. 54, 56, 68[3]) and deposition transcripts (Dkts. 47, 60), the relevant portions of which were referenced during the hearing.[4]  Based on a thorough consideration of the record evidence, the parties' written and oral argument, and the motions to strike, the Court finds that Defendant's motion for summary judgment is due to be granted.

### Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual

---

[3] Defendant refiled its supplemental affidavits at Dkt. 68 to correct a page omission in the original filing at Dkt. 50.

[4] During the hearing, Plaintiff cited to evidence for the first time concerning alleged discriminatory discipline, based on the lack of disciplinary measures taken against another police officer, Timothy Keck. Plaintiff has not, however, pled a discriminatory discipline claim, and the Court does not address it herein.

inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

### *Discussion*

Plaintiff's Complaint is premised on Title VII and the FCRA.[5] Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Intentional discrimination may be proven through either direct or circumstantial evidence. Direct evidence is "evidence, which if believed, proves existence of fact

---

[5] Plaintiff brings parallel claims pursuant to the FCRA in Count III. Because decisions construing Title VII are applicable to FCRA claims, Plaintiff's claims are analyzed concurrently. *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1389-90 (11th Cir.1998).

in issue without inference or presumption." *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 n. 6

(11th Cir.1987); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189-90 (11th Cir. 1997)

(surveying direct evidence cases).  In the instant case, Plaintiff has not alleged any direct evidence

of discrimination.

Claims of discrimination based on circumstantial evidence are analyzed under the burden-

shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973).  First, a

plaintiff must establish a prima facie case of discrimination. *Id.*; *Wilson v. B/E Aerospace, Inc.,* 376

F.3d 1079, 1087 (11th Cir. 2004).  If the plaintiff sustains this burden, the burden shifts to the

employer to articulate a legitimate, nondiscriminatory reason for its actions.  *Id.*  The presumption

of discrimination is then rebutted, and "the burden of production shifts to the plaintiff to offer

evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Wilson,* 376

F.3d at 1087. The plaintiff must meet the defendant's proffered reason head on and rebut it. *Id.* at

1088.

In Counts I and III, Plaintiff alleges that Defendant engaged in disparate treatment by not

selecting her for the three police officer positions that were filled on September 20, 2005, October

10, 2005, and November 28, 2005 because she is a female and because she had a relationship with

Clay, an African-American.  In Counts II and III, Plaintiff alleges that Defendant failed to select her

for the same positions in unlawful retaliation for her complaint to the City Council on February 21,

2005 and her filing of the EEOC charge in March 2005.

### A.  Disparate Treatment (Counts I and III)

### 1.     Prima facie case

In this case, it is undisputed that Plaintiff's GREAT officer position was eliminated due to

lack of grant funding, which constitutes a "reduction in force" case. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998). To establish a prima facie case of disparate treatment under these circumstances, Plaintiff must show that: (1) she was a member of a protected group and was adversely affected by an employment decision; (2) she was qualified for her position or to assume another available position at the time of the discharge; and (3) there is sufficient evidence from which a rational fact finder could conclude that Defendant intended to discriminate against her in making the discharge decision. *Id.* at 1331; *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344-45 (11th Cir. 2003) (ADEA case). There is no dispute that Plaintiff, a white female, is a member of a protected class based on her gender and her relationship with Clay, an African-American. *See Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986); *Tomczyk v. Jocks & Jills Restaurants, LLC*, 198 F. App'x 804, 809 (11th Cir. 2006) (noting persons involved in an interracial relationship are protected by Title VII). It is also undisputed that Plaintiff was adversely affected, when, after her GREAT officer position was eliminated, she was not selected to fill one of the three open police officer positions.

It is well-established that in order to prove a prima facie case, Plaintiff must provide affirmative proof of qualification. *Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1386 (11th Cir. 1983). Jackson testified that the requirements set forth in the job posting for the police officer position were: "Florida Police Officer Standards, 19 years of age, high school diploma or GED." (Jackson Dep. at 32-33). There is no dispute that Plaintiff met those qualifications and that she applied for the position eventually filled by Munoz.[6]

---

[6] Defendant does contend that Plaintiff did not apply for the positions filled in October and November 2005. It is well-established that when an employer has publicized an open position, the plaintiff must apply for the specific job, rather than merely express a general interest in any job. *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342,

Defendant argues that Plaintiff was not "qualified" for another position within the Police Department because: (1) she was required to stay in the GREAT position until September 30, 2005, as a condition of its funding, and (2) she had previously resigned from PCI while under investigation for improper relationships with inmates. These "qualifications" are essentially Defendant's proffered non-discriminatory reasons for not hiring Plaintiff, rather than job qualifications, which will be discussed later. Plaintiff met the advertised qualifications for the police officer position.

Plaintiff also adequately demonstrates the third element of the prima facie case, that there is sufficient evidence from which a rational fact finder could conclude that Defendant intended to discriminate against her in making the discharge decision. When a position is eliminated, an inference of discrimination is appropriate when a plaintiff shows that he applied for an available job for which he was qualified, and the employer transferred an employee outside of the protected class into that position. *See Jameson v. The Arrow Co.*, 75 F.3d 1528, 1533 (11th Cir. 1996). In the instant case, Defendant hired Munoz, a male not alleged to have a relationship with an African-American, on September 20, 2005. Based on the temporal proximity between Munoz's hiring and Plaintiff's termination, this job was "available" at the time of Plaintiff's termination. *See Benson v. Tocco, Inc.*, 113 F.3d 1203, 1209 (11th Cir. 1997) (finding employee satisfied burden of showing he was qualified for another job at the time he was fired where defendant advertised for opening "several weeks" after he was terminated); *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566, 568 (11th Cir. 1992) (plaintiff was terminated in June and positions were open in February,

---

1344-45 (11th Cir. 2003) (ADEA case). Plaintiff did express an interest in a police officer position that opened on or about August 13, 2005. It is not clear from the record which hiring filled this vacancy. The Court will assume, construing the facts in the light most favorable to Plaintiff, that Plaintiff applied for the positions filled in October and November 2005.

April, May, and September); *cf. Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1083 & n. 4 (11th Cir.1990) (finding there is no open position available where positions "were open either well before the time of plaintiffs' termination or several months after their termination"). Accordingly, the hiring of Munoz supports the requisite inference of discrimination necessary to sustain Plaintiff's prima facie case. *See Jameson,* 75 F.3d at 1533.

## 2.    *Non-discriminatory reason and pretext*

Defendant has presented two non-discriminatory reasons for its failure to hire Plaintiff for the positions filled in September, October, and November 2005. First, Sullivan avers that if Defendant failed to employ a GREAT officer throughout the entire funding year, it would forfeit grant funding for the year. (Sullivan Aff. ¶ 19). Second, Defendant contends that even if Plaintiff had applied for the positions open after her GREAT position ended, she would not have been hired because of her resignation from PCI while under investigation for improper relationships inmates. (Sullivan Aff. ¶ 33; Jackson Aff. ¶ 20). With respect to the positions filled in October and November 2005, Sullivan and Jackson also aver that the patrol experience of the officers hired "greatly exceeded" Plaintiff's experience.

Plaintiff must demonstrate that each of Defendant's stated reasons are pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Rice-Lamar v. City of Ft. Lauderdale,* 232 F.3d 836, 843 (11th Cir. 2000). Thus, a plaintiff may survive summary judgment solely by undermining the credibility of the employer's asserted reasons, and need not directly show that the employer harbored an illegal motive. *Arrington v. Cobb County,* 139 F.3d 865, 875 (11th Cir. 1998). Plaintiff must, however, produce evidence "sufficient to permit a

reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Moreover, "[i]f the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007). It is the Court's responsibility "for drawing the lines on what evidence is sufficient to create an issue on pretext." *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002).

Plaintiff has produced no evidence directly contradicting Defendant's assertion that it would have lost grant funding if she had been hired for another position before September 30, 2005. Indeed, Plaintiff confirmed, based on her review of the grant documents, that a condition of the GREAT funding was that a certified GREAT officer had to be in the position until the end of the grant year. (Pl. Dep. at 57). Instead, Plaintiff makes three arguments in an attempt to cast doubt on the legitimacy of Defendant's proferred reason.

First, Plaintiff avers that the Defendant would have forfeited grant funding if the granting entity knew she was performing duties in addition to her GREAT duties.[7] (Pl. Aff. ¶ 12). Second, Plaintiff argues that Defendant's reason is undermined by the fact that Sullivan recommended her for termination in March 2005, well in advance of the end of the grant year in September. Third, Plaintiff argues that the police officer position was open for several months and that Defendant could have kept the position open for ten more days if the grant funding were the only reason for

---

[7] This allegation is the subject of a motion to strike by Defendant, which is denied at the conclusion of this Order.

Defendant's failure to hire her. This evidence, particularly the ten-day proximity between Munoz's hiring and Plaintiff's termination, is arguably sufficient to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered legitimate reason such that "a reasonable factfinder could find [it] unworthy of credence." *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004).

Nonetheless, Plaintiff fails to show that Defendant's second proferred reason for not hiring her is a pretext for unlawful discrimination. Sullivan and Jackson averred that they would not have hired Plaintiff because of her previous resignation from PCI while under investigation for having inappropriate relationships with inmates. In an effort to demonstrate that this explanation is pretextual, Plaintiff argues that she fully disclosed her previous resignation when she was hired in 2003. Specifically, she testified that "I shared that there was an allegation that I was bringing in substances, whether it be drugs or gifts." (Pl. Dep. at 95). Plaintiff testified that she did not recall whether she revealed additional allegations from the investigation, including an allegation of a sexual relationship with an inmate. (Pl. Dep. at 97-99). Accordingly, the record establishes that Plaintiff disclosed at least certain information to Sullivan pertaining to her resignation from PCI, while perhaps not all of the more damaging details. *Cf. Morgan v. City of Jasper*, 959 F.2d 1542, 1550 (11th Cir. 1992) (although plaintiff claimed that "revelation" of the circumstances of her previous job was explained during interview process, court determined that her explanation was false and prextext argument therefore failed).

The Court need not reach the question of whether Plaintiff's alleged disclosure of her resignation to Sullivan in 2003 undermines the credibility of Sullivan's reliance on the resignation in 2005 as a reason for not hiring Plaintiff. Jackson was the final decisionmaker in 2005, not

14

Sullivan. Jackson was not City Manager when Plaintiff was originally hired in 2003, and it is undisputed that Jackson did not become aware of Plaintiff's resignation from PCI until after April 2005. Accordingly, although Sullivan and the previous city manager may not have found Plaintiff's resignation disqualifying for the GREAT officer position, Jackson was free to evaluate that information in 2005 and make her own determination with respect to the police officer positions. *See Rojas*, 285 F.3d at 1343 (stating, in discriminatory discipline case, "[d]ifferent supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important."). Jackson testified that she considered the "GREAT officer grant position different than a full-time police officer position." (Jackson Dep. at 69). Because Jackson, as the City Manager, was charged with the final hiring decision, the circumstances of Plaintiff's previous resignation from PCI constitute a legitimate non-discriminatory reason for Jackson's decision not to hire Plaintiff as a full time police officer.

In an effort to impute discriminatory animus to Jackson, Plaintiff avers that Sullivan and Butch Jackson, Patricia Jackson's husband, made frequent racially harassing comments to her. Specifically, Plaintiff alleges that Sullivan made a comment about Plaintiff's "kinky haired kid." Assuming that this comment indicates an animus regarding Plaintiff's relationship with Clay, Plaintiff has failed to identify any other comments with specificity.[8] Because this was "an isolated comment, unrelated to the decision to fire [Plaintiff], it, alone, is insufficient to establish a material fact on pretext." *Rojas*, 285 F.3d at 1343. As oft-stated, Title VII is not a general civility code. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239, 1242 (11th Cir. 2001).

---

[8] Christian avers that Sullivan also called Barr by her last name and shouted it in "a pirate voice 'Barrrrrr.'" (Christian Aff. ¶ 9). This does not reveal or suggest any discriminatory animus.

Moreover, even if Sullivan is assumed to have harbored a discriminatory animus, he was not the ultimate decisionmaker.    In order to hold an employer liable for the alleged discriminatory animus of an employee who is not the decisionmaker, the actual decisionmaker must merely "rubber stamp" the recommendations of the biased employee, without any independent investigation. *Llampallas v. Mini-Circuits, Lab., Inc.,* 163 F.3d 1236, 1249 (11th Cir.1998).    In this type of situation, the biased employee uses the decisionmaker as a conduit, or "cat's paw," to effect his discriminatory animus. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332, (11th Cir. 1999). Although Plaintiff does not expressly invoke the "cat's paw" theory, the Court notes that this argument would nonetheless be unavailing.

Although Jackson testified that there was never a time when she did not hire someone that Sullivan recommended (Jackson Dep. at 17-18), she also testified that she changed Sullivan's mind about firing Plaintiff when he recommended her termination in March 2005 (Jackson Dep. at 64). Jackson met with Plaintiff, reviewed a background check on Plaintiff that revealed Plaintiff's resignation from PCI, and determined that Plaintiff should not be hired for the police officer position. (Jackson Dep. at 24, 53). These facts do not indicate that Jackson merely adopted or rubber-stamped Sullivan's recommendation, which might otherwise impute to her his alleged discriminatory animus. Rather, it appears that Jackson engaged in an independent evaluation of the facts and came to her own conclusion. When the final decisionmaker, in this case Jackson, engages in an independent investigation, that suffices to remove any taint of discriminatory animus. *Llampallas*, 163 F.3d at 1250; *Hankins v. Airtran Airways, Inc.*, 237 F. App'x 513, 521 n.5 (11th Cir. 2007). Accordingly, Sullivan's alleged racial animus may not be imputed to Jackson, the ultimate decisionmaker. *See id.*

16

Finally, Plaintiff alleges that Butch Jackson's alleged discriminatory animus toward Plaintiff should be imputed to Patricia Jackson. Specifically, Christian, a reserve officer in the Police Department, averred:

> Butch Jackson made the statement that as long as Patricia Jackson was city manager Leslie Barr would not be a police officer. It was common knowledge in the department that this was understood to mean that Leslie Barr's relationship with an African-American male would preclude full time regular employment. Butch Jackson also regularly called Leslie Barr a nigger loving bitch. (Christian Aff. ¶ 11).

In addition, Sullivan testified that Butch Jackson was the detective who performed the background check on Plaintiff in 2005 that revealed her resignation from PCI. (Sullivan Dep. at 66).

Butch Jackson's regular comments that Plaintiff was a "nigger loving bitch," if accepted as true, are unquestionably offensive and probative of Butch Jackson's discriminatory animus. This is *not*, however, a case involving a claim of hostile work environment. In order to be relevant to Plaintiff's claim of discrimination, Jackson's comments must be probative of the reasons for Plaintiff's non-selection as a police officer. Plaintiff points to no evidence that Butch Jackson participated in the decision not to hire Plaintiff, other than performing the background check, let alone that he was "an integral part" of a multi-level personnel decision. *Roberts v. Randstad N. Am., Inc.*, 231 F. App'x 890, 895 (11th Cir. 2007); *Hankins*, 237 F. App'x at 521. Thus, his discriminatory animus cannot be imputed to Patricia Jackson. In addition, Plaintiff has provided no authority under which Butch Jackson's alleged racial and gender animus could be imputed to Patricia Jackson, merely because he was her husband.

For these reasons, Butch Jackson's alleged statement that "as long as Patricia Jackson was city manager Leslie Barr would not be a police officer," is likewise not attributable to Patricia Jackson. There is nothing in this record suggesting that she knew of her husband's statement, agreed

with it, or ratified it.  Moreover, the statement on its face does not demonstrate *any* discriminatory intent on the part of Patricia Jackson.  Indeed, taken at face value, it confirms Jackson's decision not to hire Plaintiff as a police officer because of her resignation from PCI.  *Cf. Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999) (noting that alleged harassing employee's statement "I'm getting fired up, too," when taken in context, did not objectively have a sexual or gender-related connotation).

Defendant, through Jackson, has articulated a non-discriminatory reason for not hiring Plaintiff as a full time police officer.  When "the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Wilson,* 376 F.3d at 1088.  Christian's averment as to what Butch Jackson said fails to meet Patricia Jackson's stated reason "head on" and also fails to rebut it.[9]  What is relevant is Jackson's intent. Jackson testified that when making the decision not to hire Plaintiff: "I didn't consider any kind of personal relationship, period." (Jackson Dep. at 77).  Absent any record evidence that Jackson held an unlawful animus toward Plaintiff, Plaintiff has failed to show that Defendant's stated reason is pretextual.

Based on the foregoing, the Court finds that Defendant has met its burden of producing a legitimate, non-discriminatory reason for its failure to select Plaintiff for the positions filled in September, October, and November 2005: Plaintiff's previous resignation from PCI while under

---

[9] Although Christian avers that it was commonly understood by members of the Police Department that by this comment, Jackson meant "that Leslie Barr's relationship with an African-American male would preclude full time regular employment," Christian's statement is pure hearsay, which could not be reduced to admissible form at trial.  *See* Fed. R. Civ. P. 56(e); *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (noting that otherwise admissible evidence may be submitted in inadmissible form at the summary judgment stage if it can be reduced to admissible evidence at trial).  Christian may not testify at trial as to how members of the Police Department understood Butch Jackson's comment, nor would such testimony be relevant in assessing Patricia Jackson's intent.

investigation, as a corrections officer, for having inappropriate relationships with inmates. Plaintiff has failed to demonstrate that this reason was a pretext for unlawful discrimination based on her gender or relationship with Clay.

As a final matter, Defendant has produced an additional reason for not hiring Plaintiff for the positions filled in October and November 2005. Sullivan and Jackson averred that the patrol experience of the officers hired in October and November 2005 "greatly exceeded" Plaintiff's experience. (Sullivan Aff. ¶ 33; Jackson Aff. ¶ 20). The Court finds that this statement is also sufficient to meet Defendant's burden to produce a non-discriminatory reason for its decision not to hire Plaintiff. *IMPACT v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990) (noting that employer's statement that it hired "best qualified" candidate was insufficient to meet burden of production where it did not point to specific qualifications, such as comparable work experience). When relative qualifications are at issue, "[courts] do not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." *Denney v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001). Accordingly, "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Cooper*, 390 F.3d at 732; *see also Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (declining to address proper standard for evaluating relative qualifications); *see also Vessels v. Atlanta Independent Sch. Sys.*, 408 F.3d 763, 772 (11th Cir. 2005) (noting that when the qualifications disparity is not the sole basis for arguing pretext, the disparity need not be so dramatic to support an inference of pretext.)

Although Plaintiff has provided evidence that she had patrol officer experience exceeding

what Sullivan averred was "extremely limited," Plaintiff has failed to present any evidence concerning the identity or the qualifications of the two officers hired in October and November 2005. Accordingly, Plaintiff has failed to demonstrate that she was more qualified than the new hires, let alone that the disparities in qualifications were so apparent that is "a reasonable fact-finder could infer that [Defendant] did not believe that [Plaintiff] was better qualified." *Wilson*, 376 F.3d at 1090 (internal quotations omitted).

In summary, Plaintiff has failed to sustain her burden to show that a discriminatory reason more likely motivated Defendant than the non-discriminatory reasons it has proferred. *See Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir. 1987). Title VII does not authorize a court to "sit as a super-personnel department that reexamines an entity's business decisions," *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000), or to adjudge "whether employment decisions are prudent or fair," *Rojas*, 285 F.3d at 1342. Jackson relied on a non-discriminatory, eminently credible reason for not hiring Plaintiff as a police officer, and Plaintiff has failed to demonstrate that this reason is a pretext for unlawful discrimination.   Accordingly, Defendant's motion for summary judgment is granted as to the Title VII and FCRA disparate treatment claims in Counts I and III.

### B. Retaliation (Counts II and III)

#### 1.   Prima facie case

In Counts II and III, Plaintiff alleges that Defendant retaliated against her for her February 21, 2005 letter to the City Council and her filing of the EEOC charge in March 2005 by not selecting her for the three police officer positions filled in September, October, and November 2005.[10]

---

[10] In the Complaint and the response to the instant motion, Plaintiff does not contend that the elimination of her GREAT position, itself, was retaliatory, nor would this argument be availing.  Defendant has alleged that the position was eliminated by FDLE.  (Sullivan Aff. ¶¶ 20, 21).  Although Sullivan's averment is arguably hearsay,

In order to state a prima facie case of retaliation, Plaintiff must present evidence that: (1) she engaged in statutorily protected conduct; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between the statutorily protected conduct and the adverse employment decision. *Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006). Defendant does not dispute that Plaintiff engaged in statutorily protected activity and that she suffered an adverse employment action. *See Bass v. Board of County Com'rs, Orange County*, 256 F.3d 1095, 1117 (11th Cir. 2001) (filing EEOC charge is protected activity). Defendant instead contends that Plaintiff cannot demonstrate the requisite causal connection between these two elements.

In order to establish causation, Plaintiff must provide evidence that the decisionmaker was aware of the protected conduct and that there was close temporal proximity between this awareness and the adverse employment action or other evidence "'that the protected activity and the adverse action were not wholly unrelated.'" *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999); *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). The Eleventh Circuit has repeatedly held that a lapse of three or four months between the protected activity and the adverse employment action is insufficient to establish the requisite causal connection, in the absence of any other evidence of causation. *Hidgon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) (citing *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Defendant does not dispute that Sullivan and Jackson were aware of her protected activity. Rather, Defendant argues that too much time passed between Plaintiff's complaints in February and

---

Plaintiff has not objected to it, nor has Plaintiff questioned its veracity. The Court notes that the April 18, 2005 email from Plaintiff to Sullivan states that Defendant "did not elect to pursue the 4th year of the Great Program." However, Plaintiff has not argued at any time that Defendant, rather than FDLE, was responsible for the non-renewal of her position. In addition, her affidavit states that prior to April 18, 2005, "I became aware that the GREAT grant would not be extended for the city of Eagle Lake." (Pl. Aff. ¶ 7).

March 2005 and her September 30, 2005 termination. Plaintiff contends that the timeline of events following her February 2005 complaint to the City Council and March 2005 filing of the EEOC charge provides evidence of a causal connection. After Plaintiff protested the alleged disparate treatment she received from Sullivan, Sullivan recommended Plaintiff for termination two weeks later, on March 4, 2005, and ultimately placed her on one week unpaid leave and three months probation. Sullivan did not respond to Plaintiff's continued inquiries about the status of her job until July 18, 2005. At that time Sullivan told Plaintiff that she would have to apply for specific job openings, which she did on or about August 13, 2005. Thereafter, Defendant hired Munoz, who had no police officer experience, and continued to hire for other positions. Although the first hiring that Plaintiff challenges took place over six months after Plaintiff's protected activity, the Court does not find this necessarily fatal to Plaintiff's prima facie case under these facts. The element of a "causal link" is broadly construed. *See Pennington*, 261 F.3d at 1266. The Court will assume that Plaintiff has adequately demonstrated that "the protected activity and the adverse action were not wholly unrelated," despite the absence of close temporal proximity. *Gupta,* 212 F.3d at 590 (plaintiff demonstrated a causal connection where she was denied a merit raise around the time she filed an EEOC charge and was denied an extension for her tenure clock the following year); *see also Bass*, 256 F.3d at 1119 (series of adverse employment actions following the filing of an EEOC charge was sufficient to demonstrate causal connection although they occurred over the course of one year).

## 2. *Non-discriminatory reason and pretext*

With respect to Plaintiff's retaliation claims, Defendant relies on the same non-discriminatory reasons for not selecting Plaintiff for the police officer positions as it did with respect to the disparate treatment claims. As discussed above, Plaintiff has failed to show that Jackson's reliance on

22

Plaintiff's investigation and resignation from PCI was a pretext for unlawful discrimination. Plaintiff contends, however, that the suspicious timeline of events following her protected activity constitutes additional evidence of pretext. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997) (the same evidence offered to establish a prima facie case may be relied on to assess pretext).

Assuming, for purposes of this analysis, that Sullivan's treatment of Plaintiff between the time she complained and her termination supports an inference of retaliatory intent on the part of Sullivan, Plaintiff has failed to introduce any evidence of retaliatory animus on the part of Jackson, the ultimate decisionmaker.  In fact, Jackson overturned Sullivan's March 4, 2005 recommendation to terminate Plaintiff, and as discussed, Jackson individually evaluated Plaintiff's application before deciding not to hire her.  Plaintiff has presented no other evidence suggesting that a "discriminatory reason more likely motivated" Jackson or that Jackson's reliance on Plaintiff's resignation is "unworthy of credence." *Rice-Lamar*, 232 F.3d at 843.

Plaintiff has failed to show that Defendant's proferred reason for not selecting her for the police officer positions was a pretext for an unlawful retaliatory motive.  Based on the foregoing, Defendant's motion for summary judgment is granted as to Plaintiff's Title VII and FCRA retaliation claims in Counts II and III.

### *Motions to Strike*

Federal Rule of Civil Procedure 12(f) provides that the court may strike from any pleading any "redundant, immaterial, impertinent, or scandalous matter."  Motions to strike are not favored, however, and will "usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Seibel v. Soc. Lease, Inc.*, 969 F. Supp.

713, 715 (M.D. Fla.1997).   In their respective motions, both parties demonstrate fundamental misunderstandings of the nature and purpose of motions to strike.   Their motions are denied.

### 1.   Defendant's Motion to Strike Plaintiff's Affidavit (Dkt. 27)

In its sixteen page motion to strike, Defendant objects to Paragraphs 5, 6,  9, 10, 11, 12, 13, 14, 16, and 17 of Plaintiff's affidavit (Dkt. 26) as conclusory, speculative, and/or irrelevant.  This "motion to strike" largely repeats substantive argument contained in Defendant's motion for summary judgment and effectively constitutes an unauthorized reply in violation of Local Rule 3.01.

For instance, Paragraph 5 of Plaintiff's affidavit, in which she avers that as a GREAT officer she responded to regular police officer calls "too many times to recall with any specificity" is buttressed by her deposition testimony that she responded to calls approximately two to three hours a day when school was in session.  (Pl. Dep. at 30).  Plaintiff's inability to recall precise detail goes to her credibility, not to the admissibility of the statement, and Defendant cites no authority for the striking of a statement based on its "imprecision."  Furthermore, Paragraph 5 and Paragraph 6 are plainly relevant to this lawsuit as they address Plaintiff's experience as a patrol officer.

Defendant also objects to Paragraphs 9, 11 and 13, in which Plaintiff avers she expressed interested in a non-grant, full-time positions before her position ended.  Specifically, Defendant takes issue with the fact that Plaintiff did not identify her August 2005 email during her deposition.  This does not render her affidavit a sham; "[t]o allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).

Defendant objects to Paragraph 12, in which Plaintiff asserts that Defendant would have forfeited grant funding "if the granting entity knew I was conducting jobs outside the parameters for

what the grant called for." Defendant contends there is no basis for finding that Plaintiff has personal knowledge for this conclusion. In response, Plaintiff argues that she had knowledge of the grant's content, given that she was the GREAT officer for two years. In this respect, both Sullivan's affidavit and Plaintiff's affidavit are similar, as they both purport to describe provisions of the grant, without providing the underlying grant documents. If the Court is to accept Sullivan's assertion that Plaintiff was required to remain in the grant position to receive funding for the whole fiscal year, there is an equal basis for accepting Plaintiff's averment that Defendant would lose funding for other reasons. Both parties were free to impeach these assertions by introducing the grant document, but neither party has done so.

The remaining portions of Defendant's motion, addressed to Paragraphs 14, 16, and 17, essentially contest the legal sufficiency of Plaintiff's claims, under the guise of challenging the affidavit's "relevancy" or its "conclusory" statements.[11] Defendant's arguments on these points, to the extent they have merit, have been addressed in the ruling on the motion for summary judgment.

Defendant's motion to strike Plaintiff's affidavit is denied.

## 2.    *Plaintiff's Motion to Strike Jackson's Affidavit (Dkt. 43)*

Plaintiff moves to strike several paragraphs of Jackson's first affidavit (Dkt. 20-3). Plaintiff's motion manifests a basic misunderstanding of the Rule 56 requirement for affidavits to be made on "personal knowledge" and the similar requirement for "personal knowledge" found in Rule 602 of the Federal Rules of Evidence. Fed. R. Civ. P. 56(e); Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal

---

[11] Defendant also objects to the relevancy of statements in Paragraph 10 dealing with the hiring of Munoz because Defendant construed the Complaint to not apply to the hiring of Munoz. As explained above, the Complaint does apply to the hiring of Munoz, and this objection is therefore without merit.

knowledge of the matter.").

Plaintiff claims that Paragraph 17, 18, 19, 20, 23 are not based on Jackson's personal knowledge. The deposition testimony referenced by Plaintiff does not call into question Jackson's personal knowledge of the events at issue. Based on her review of the relevant documents, Jackson has personal knowledge of when she learned of Plaintiff's resignation, that other applicants had not resigned from employment while under investigation, that Plaintiff's duties as a GREAT officer were not similar to those of a patrol officer, that the October and November applicants had experience greatly exceeding Plaintiff's experience, and that she did not consider Plaintiff's relationship with Clay during the selection process. Under these circumstances, Defendant was under no obligation to provide the original documents referenced in the affidavits, as it was not attempting to prove the contents of the writing. *United States v. Castro*, 89 F.3d 1443, 1455 (11th Cir. 1996); *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648-49 (7th Cir. 2006); *Dalton v. F.D.I.C.*, 987 F.2d 1216, 1223 (5th Cir. 1993); Fed. R. Evid. 1002. If Plaintiff wished to dispute the contents of the documents on which Jackson purportedly relied, it was Plaintiff's responsibility to obtain these documents and point out any inconsistencies. Plaintiff had ample opportunity to do so, as the affidavits were filed on August 6, 2007, over three months before discovery closed on November 15, 2007.

Plaintiff also objects to Paragraph 7, which avers that Plaintiff was employed as a GREAT officer between October 2003 and September 2005. Jackson's deposition testimony indicated that she has personal knowledge of this fact, despite Plaintiff's argument to the contrary. Moreover, this fact is undisputed. In Paragraph 8, Jackson avers that she became aware that the GREAT officer position would not be funded "[s]ometime during the first half of 2005." Although Plaintiff again

argues that this is not based on Jackson's personal knowledge, it is clear that Jackson has nothing but personal knowledge of when she became aware the grant would not be funded. Again, it is undisputed that the grant position lost funding in 2005.

Finally, Plaintiff moves to strike Paragraphs 11 and 14, in which Jackson avers that Plaintiff did not apply for the positions filled after September 30, 2005. Plaintiff identifies no specific ground for striking these paragraphs. Assuming that Plaintiff contends that this portion of the affidavit is a "sham," the referenced deposition testimony, when read in its clear context, does not contradict Jackson's averments.

Plaintiff's motion to strike the first affidavit of Patricia Jackson is denied.

### 3.     *Plaintiff's Motion to Strike Sullivan's Affidavit (Dkt. 44)*

Plaintiff moves to strike Paragraphs 28, 29 and 32 of Sullivan's first affidavit (Dkt. 20-2). In Paragraphs 28 and 29, Sullivan avers that Plaintiff resigned from PCI while under investigation for having inappropriate relationships with inmates and that he would not have recommended her for a police officer position due to her resignation. (Sullivan Aff. ¶¶ 28, 29). Plaintiff argues that Sullivan's assertions are based on a report not prepared by him, apparently challenging Sullivan's personal knowledge. Plaintiff's argument on this point is disingenuous at best, given that Plaintiff has repeatedly argued that she told Sullivan she had resigned from PCI while under investigation. Plaintiff's statements to Sullivan are not hearsay, as they are admissions by a party-opponent, and are not "offered in evidence to prove the truth of the matter asserted." *See* Fed. R. Evid. 801(c), (d)(2). In any event, whether Plaintiff actually resigned while under investigation -- which is not disputed -- is irrelevant to the determination of Sullivan's good faith belief that the resignation was probative to her performance as a police officer. *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466,

1470 (11th Cir. 1991). Plaintiff's motion is accordingly denied as to Paragraphs 28 and 29.

Plaintiff also objects to Paragraph 32 of Sullivan's affidavit, which recounts a May 6, 2005 memorandum from another detective. Paragraph 32 has not been considered herein and Plaintiff's motion to strike Paragraph 32 is therefore denied as moot.

**4.    *Plaintiff's Motion to Strike Jackson's Supplemental Affidavit (Dkt. 52)***

Plaintiff moves to strike Paragraphs 8, 12, 16, 17, and 18 of Jackson's supplemental affidavit (Dkt. 68-2). The challenged paragraphs are substantially similar to the paragraphs challenged in Jackson's first affidavit. (*See* Dkt. 20-3, ¶¶ 8, 16, 17-20). Accordingly, Plaintiff's motion is denied for the reasons stated with respect to Jackson's first affidavit.

**5.    *Plaintiff's Motion to Strike Sullivan's Supplemental Affidavit (Dkt. 53)***

Plaintiff moves to strike Paragraphs 20, 25, and 28 of Sullivan's supplemental affidavit (Dkt. 68-3). Plaintiff contends that these paragraphs constitute "blatant hearsay." The Court has not relied on the challenged portions of these statements, and this motion is therefore denied as moot.

### Motions to Compel

**1.    *Plaintiff's Motion to Compel Answers to Deposition Questions (Dkt. 45)***

Plaintiff filed a motion to compel answers to interrogatory questions concerning documents that may have been reviewed by Jackson prior to her deposition. This motion was filed on January 21, 2008, fifty-six days after the deposition of Jackson was taken on December 5, 2007. The discovery cut-off date was November 15, 2007. Although Defendant does not object to the request to compel, even "[i]f the parties agree to conduct discovery after the Court's discovery deadline, they cannot expect the Court to resolve their post-deadline discovery disputes." *Chevola v. Cellco P'ship*, No. 8:06-cv-1312, 2007 WL 3379779, at *1 (M.D. Fla. Nov. 14, 2007). Plaintiff's timing is

indicative of Plaintiff's approach to this litigation, which includes: (1) failing to respond to Defendant's motion to dismiss, after obtaining an extension of time in which to do so (Dkt. 13), failing to respond to Defendant's motion to compel (Dkt. 27), failing to file a supplement to the summary judgment after complaining of her inability to conduct discovery (Dkts. 25, 36), and filing two motions to strike, also on January 21, 2008, as to affidavits originally filed on August 6, 2007 (Dkts. 43, 44).   In addition, Plaintiff has made no showing as to how the documents Jackson reviewed prior to her deposition would assist Plaintiff in responding to the summary judgment.   To the extent Plaintiff sought to obtain personnel files of Munoz and the officers hired in October and November 2005 -- which may have been relevant to the summary judgment -- Plaintiff had ample opportunity to do so through a request for production.   Plaintiff's motion is accordingly denied.   *See Myers v. Cent. Fla. Investments, Inc.*, 237 F. App'x 452, 458 (11th Cir. 2007) (refusal to grant motion to compel not clear error where it was filed eighty-eight days after the close of discovery).

**2.      *Plaintiff's Motion to Compel and "Motion to Abate any Addition of a Decision on Defendant's Motion for Summary Judgment" (Dkt. 73)***

Plaintiff filed this motion to compel on March 11, 2008, almost four months after the close of discovery.   Plaintiff has advanced no reason justifying her failure to pursue a motion to compel within the discovery period, especially as the documents were originally requested on August 14, 2007 (Dkt. 73 at 1).   A motion to compel at this juncture of the litigation would unduly delay these proceedings and is plainly untimely.   *See Myers*, 237 F. App'x at 458.   In any event, the requested information, which apparently goes to Plaintiff's experience as a patrol officer, would not effect this Court's ruling on Defendant's Motion for Summary Judgment.   The motion to compel and motion to abate are therefore denied.

*Conclusion*

Accordingly, it is **ORDERED AND ADJUDGED**:

1)      Defendants' Motion for Summary Judgment (Dkt. 20) is **GRANTED**;

2)      Defendant's Motion to Strike Portions of Plaintiff's Affidavit (Dkt. 27) is **DENIED**;

3)      Plaintiff's Motion to Strike the Affidavit of Patricia Jackson (Dkt. 43) is **DENIED**;

4)      Plaintiff's Motion to Strike Portions of the Affidavit of J.R. Sullivan (Dkt. 44) is **DENIED**;

5)      Plaintiff's Motion to Strike Supplemental Affidavit of Patricia Jackson (Dkt. 52) is **DENIED**;

6)      Plaintiff's Motion to Strike Portions of the Supplemental Affidavit of J.R. Sullivan (Dkt. 53) is **DENIED.**

7)      Plaintiff's Motion to Compel Answers to Deposition Questions (Dkt. 45) is **DENIED**.

8)      Plaintiff's Motion to Compel and "Motion to Abate any Addition of a Decision on Defendant's Motion for Summary Judgment" (Dkt. 73) is **DENIED.**

9)      All other pending motions are **DENIED AS MOOT**.

10)     The Clerk is directed to enter judgment for Defendant and **CLOSE** this case.

**DONE AND ORDERED** in chambers this _17th_ day of March, 2008.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record